[No. 21932. Department One. January 2, 1930.]

EAGLE LIVERY & TRANSFER COMPANY, *Appellant*, v. LAKE CHELAN RECLAMATION DISTRICT, *Respondent*, V. T. BOAZ *et al.*, *Defendants*.[1]

*Barrows & Gemmill,* for appellant.

*Charles R. Sargent* and *Wm. A. Grimshaw,* for respondent.

TOLMAN, J.—Appellant, as plaintiff, brought this action to recover $2,500 deposited by it with its bid to do certain construction work, which deposit the respondent district had theretofore declared to be forfeited. From a judgment denying it relief and dismissing its action, the plaintiff has appealed.

It appears that the respondent district advertised a call for bids for the construction of certain dikes, dams and works for the improvement of its system, and required that each bid, to be considered, must be accompanied by a certified check for five per cent of the amount bid, as a guarantee that the successful bidder would, within five days after acceptance of his bid, enter into a contract to do the work and furnish the required bond. Appellant, before it had a copy of the plans and specifications, made an inspection on the ground of the proposed work, and, in the absence of the consulting engineer, talked with the resident engineer and the manager of the district, from whom it claims to have received information that the principal dikes could be built by sluicing or hydraulicking with earth taken from the immediate vicinity.

After this investigation upon the ground and the conversations with the resident engineer and the manager, appellant was supplied with a copy of the plans and specifications, from which it rather clearly appears that the hydraulic method would not be practical or acceptable. Nevertheless, basing its estimate

of costs on that method of performing the work, appellant made a bid of $44,124.50 and with the bid deposited a certified check for $2,500.

When the bids were opened on the appointed day, the consulting engineer was present and informed the board of directors that appellant's bid was far too low; that he felt that it had based its bid on doing the work by the hydraulic method, which would not produce satisfactory results and would not be permitted; and that the district must look well to protecting itself if it let the work at such a figure. The meeting then adjourned to the next day in order that the financial standing of appellant and another low bidder might be investigated. At the adjourned meeting on the following day, after receiving a satisfactory report upon the moral and financial standing of the appellant, the following is shown by the minutes to have occurred:

"Mr. Langloe said from talking with Mr. Monary he felt he was intending to do the diking by hydraulic method. Said the material was not suitable for hydraulicking and would hardly produce a satisfactory dam by this means—that he must produce a satisfactory dam and that unless they found different material than they had already found they would not let him attempt to build the dam in this way. Mr. Langloe also said that of course the contractor would lose money at that price and said that the board would have to be prepared to do what you have to do under these circumstances. He said, 'I am thoroughly satisfied he cannot come anywhere near doing it for that money.' Also the district must see that it is protected from liens so that the laborers cannot come back on the district. Hold back 15% of the pay. District would have to be doubly careful to keep from becoming liable.

"Mr. Langloe said the second lowest bidder could not complete the work for the amount of money he had bid unless there was a big change in the labor market.

"Motion by Enslow second by Burow and passed

that the district accept the bid of the Eagle Transfer Co. provided proper surety bond is written.''

On the following day, the board again convened to consider the matter of bids for this work, and it appears from the minutes that the manager of the district and the consulting engineer reported to the board at that meeting that appellant had informed them that it rejected the award to it and would not enter into a contract to do the work, and thereupon, in the presence of the board, its attorney verified that information by a telephone communication with the appellant. Thereupon, according to the minutes, appellant's refusal to execute the contract was recited, and upon that, the board, by resolution in appropriate language, forfeited its certified check in accordance with the terms of the call for bids. Following that action, the contract was awarded to the next low bidder, who refused to accept the same on his bid of $50,715, but asked the privilege of amending his bid, increasing the amount to $60,715. This the board permitted to be done. The amended bid was received in lieu of the original and was accepted, and thereupon the contract was awarded to that bidder on his amended bid. Another meeting of the board was held a few days later, at which the last mentioned successful bidder was present in person, and he then asked leave to withdraw his bid, which request was refused. Thereupon appellant, apparently by personal representative then present, offered to undertake a contract to perform the work for $66,503.50, and the board agreed to consider this offer in the event that Hagman, the other low bidder, forfeited his rights under the award of the contract to him. Hagman was then recalled and asked to express his intentions, and he refused to proceed. Whereupon another resolution was passed, again forfeiting appellant's deposit to the extent of five per cent upon

the amount of its bid and directing that the excess over that amount of $293.78 be returned to it. The Hagman deposit was also forfeited, and thereupon the board proceeded to let the contract to the third lowest bidder at the price of $62,985.50. Thereafter appellant's second bid was rejected.

In addition to what appears in the minutes of the board, it is also shown that, on the day that the contract was awarded to appellant, it was so advised by written communication, and that it replied thereto by letter, dated four days later, before the expiration of the five-day period and before the board undertook to consider the next lowest bid, which reads:

"On account of a misunderstanding and the extremely short time in which we had to figure the work on two proposed dams, we are satisfied that our bid is too low by about twenty-seven thousand dollars. We therefore do not feel justified in accepting the contract.

"If the committee sees fit, we would appreciate a meeting at your earliest possible convenience, for the purpose of re-bidding.

"In regard to the certified check given you, we would of course appreciate its return, but realize it is up to you.

"Thanking you for the courtesy you have extended us, and trusting that you will give us another opportunity to bid on this job, we are,

"Very truly yours,
"Eagle Transfer Co.,
"By R. O. Colvin."

The claimed misleading and mistake relate only to appellant's assumption that the work might be done by the hydraulic method. Aside from the testimony of the manager and resident engineer, which raises a doubt at least that anything was said which could be misleading, appellant had access to the plans and specifications before submitting its bid, and was fully

conversant with their requirements, and these were amply sufficient to advise one skilled in that kind of work that such a method was not contemplated and could not be used if the plain written terms were followed. So we are satisfied that relief cannot be granted upon that ground.

■ An argument is advanced here, based upon appellant's second bid, seeking to establish that the board of directors, in legal effect, set aside their action in making an award upon the first bid and permitted that bid to be amended, thus also setting aside the forfeiture of the deposit; but the facts are against that contention. A careful examination of the whole record clearly establishes that there was nothing in the reception of, or the action upon, the second bid which in any manner affected the action theretofore taken on the first bid. It is not denied that, as recited in the minutes and as confirmed by the subsequent correspondence, appellant refused to enter into the contract well before the expiration of the five-day period and the board was justified in acting upon that refusal without waiting further.

■ Appellant seems to complain because the trial court made no formal findings of fact. This action is one for relief on the ground of mistake and constructive or actual fraud and therefore was, we think, equitable in its nature. It was tried as an equitable action, hence no findings were necessary, but, in any event, since we have been willing to try the issues *de novo,* appellant has no cause for complaint in that respect.

The controlling facts seem so clear to us as to make it unnecessary to discuss the authorities cited.

The judgment is affirmed.

MITCHELL, C. J., PARKER, and MILLARD, JJ., concur.
BEALS, J., concurs in the result.